hAMY, Judge.
The appellant filed a petition seeking to terminate his financial responsibility for the two children born during a marriage that ended in divorce. Through their appointed curator, the children filed an exception to the petition asserting that no cause of action existed as any termination proceeding had prescribed. The exception was sustained by the trial court. The father now appeals. For the following reasons, we affirm.
Factual and Procedural Background
Shane and Mary Fontenot were married in 1989. Two children were born during the marriage, the oldest in January 1990 and the youngest in September 1992. The couple divorced in April 1994 and Mr. Fon-tenot was awarded sole custody of the children. The instant matter was instituted when, on August 30, 1999, Mr. Fonte-not filed a “Petition to Disavow[ ] Paternity and Change of Custody.” He alleged that in May 1999, he was informed by a third party that the children’s mother “was proclaiming verbally and overtly that the Petitioner was not the biological, natural father of the above identified minor children.” Mr. Fontenot further alleged that subsequent to being informed of the statement, DNA testing revealed he was not the children’s biological father. Due to this finding, he asserts in the petition, he sought to transfer custody of the children to their mother and to terminate his financial responsibility for the children. Domiciliary custody of the children was thereafter awarded to their mother.
After the petition was filed, counsel was appointed to represent the children. Through their counsel, the children filed an exception to Mr. Fontenot’s petition alleging that it stated “no cause and/or no right of action in that his action for disavowal has prescribed.... ” They asserted that the matter had prescribed as 180 days had elapsed since either the plaintiff learned of their birth or “without a suit for ^disavowal being brought within the contemplation and requirements of and from the effective date of R.S. 9:305.”
The trial court found in favor of the children, sustaining the exception. The court reasoned that the provisions of La. R.S. 9:305, the statute under which Mr. Fontenot sought relief, and its subsequent amendments were substantive and applied only prospectively.[1] Mr. Fontenot appeals, assigning the following as error:
1. The district court erred in granting the peremptory exception of prescription filed by the defendant-ap-pellee by considering the statute a substantive change in the law rather than procedural.
2. The district court erred in granting the peremptory exception of no cause of action filed by the defen *332 dant-appellee by granting the prescription action, thereby preventing a trial on the merits.
The appellees have filed an answer to the appeal, requesting damages for frivolous appeal and additional curator fees for the representation by their court-appointed attorney on appeal.
Discussion
For frame of reference, we observe that the general disavowal provision relating to children born of a marriage is contained in Article 189 of the Louisiana Civil Code.[2] At the time it was operative in this case, Article 189 provided:
|SA suit for disavowal of paternity must be filed within one hundred eighty days after the husband learned or should have learned of the birth of the child; but, if the husband for reasons beyond his control is not able to file suit timely, then the time for fifing suit shall be suspended during the period of such inability.[3]
The jurisprudence in this area has regularly denied an assertion that a mother’s misrepresentations regarding a child’s paternity do not constitute “reasons beyond [a husband’s] control.” Hall v. Hall, 96-954 (La.App. 3 Cir. 2/5/97); 689 So.2d 532; Whiddon v. Whiddon, 96-104 (La.App. 3 Cir. 6/5/96); 676 So.2d 674, writ denied, 96-2208 (La.11/15/96); 682 So.2d 768. Thus, any action contemplated by the above Article would be untimely as suit was filed well after the limiting time period contained therein.
In any event, Mr. Fontenot does not seek the type of disavowal discussed above, but rather, he filed for termination of financial responsibility under La.R.S. 9:305. This provision was added in 1993 and became effective August 15, 1993,[4] subsequent to the birth of the children born during the marriage and after the ^prescription of any disavowal action possible under La.Civ.Code art. 189. The 1993 Act enacting the statute provided:
Section 1. R.S. 9:305 is hereby enacted to read as follows:
§ 305. Disavowal of paternity; ancillary to child support proceeding.
Notwithstanding the provisions of Civil Code Art. 189 and for the sole purpose of determining the proper payor in child support cases, if the husband, or legal father who is presumed to be the father of the child, erroneously believed, because of misrepresentation, fraud, or deception by the mother, that he was the father of the child, then the time for fifing suit for disavowal of paternity shall be suspended during the period of such erroneous belief or for ten years, whichever ends first.
*333 Section 2. The provisions of this Act shall be applied retrospectively such that a husband or legal father who, because of the mother’s misrepresentation, fraud, or deception, erroneously believed he was the father of a child, and whose action for disavowal has prescribed, may institute such an action ancillary to any child support proceeding brought within one hundred eighty days of the effective date hereof, and any such suit not instituted within that time and any claims relating thereto shall be forever barred.
Acts 1993, No. 32. Thus, Section 2 of the above act specifically provided for a brief period of retrospective application for those husbands/legal fathers whose disavowal actions were no longer timely.
Similarly, Acts 1997, No. 1110 amended La.R.S. 9:305, in part, so that it read as follows at the time of the 1999 filing:
A. Notwithstanding the provisions of Civil Code Art. 189 and for the sole purpose of determining the proper pay- or in child support cases, if the husband, or legal father who is presumed to be the father of the child, erroneously believed, because of misrepresentation, fraud, or deception by the mother, that he was the father of the child, then the time for filing suit for disavowal of paternity shall be suspended during the period of such erroneous belief or for ten years, whichever ends first.
B. No provision of this Section shall affect any child support payment or arrears paid, due, or owing prior to the filing of a disavowal action if an order of disavowal is subsequently obtained in such action.
Section 2. The provisions of R.S. 9:305 as enacted by Act No. 32 of the 1993 Regular Session of the Louisiana Legislature and amended and reenacted by this Act shall be applied retrospectively such that a husband or legal father who, because of the mother’s | ^misrepresentation, fraud, or deception, erroneously believed he was the father of a child, and whose action for disavowal has prescribed may institute such an action ancillary to any child support proceeding brought within one hundred and eighty days of August 15, 1997 and any such suit not instituted within that time and any claims relating thereto shall be forever barred.
Again, the 1997 amendment contained a specific period for retroactive application.
Mr. Fontenot contends that La.R.S. 9:305 contains both a prescriptive period, that relating to suspension during a period of erroneous belief because of misrepresentation, and a peremptive period, that requiring any suit under the statute to be brought within ten years. In his brief, he contends that “[t]he legislature has formally declared that prior to the elapse of this ten (10) years, the legal father is entitled to this cause, thereby declaring the public policy of eligibility to this cause.” The 180 day periods of retroactive application specifically provided by the acts enacting and reenacting the statute, he argues, are applicable only to those fathers who had knowledge of the child’s paternity prior to the enactment of the statute. Since, he argues, he filed this suit prior to the passage of ten years, regarding children born in 1990 and 1992, his 1999 petition was timely. Mr. Fontenot further contends that he can bring suit under La.R.S. 9:305 as the statute is best viewed as procedural, not substantive and, thus, applicable to children born prior to the statute. We disagree with this interpretation.
Notwithstanding the cases that have identified the 1993 enactment as substantive and, thus, applicable prospectively (save the narrow period identified as available for retroactive application), review of the fundamental principles of statutory interpretation demonstrates error in Mr. Fontenot’s argument. La.Civ.Code art. 6 provides: “In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both | ^prospectively and retroactively, unless there is a legislative expression to the *334 contrary.” Mr. Fontenot contends that La.R.S. 9:305 does not deprive children born prior its enactment of any vested rights, rather, he contends that it only changes against whom they have a right of action for support. Thus, as the children can arguably still maintain a cause of action against their biological father, Mr. Fontenot argues, the statute does not destroy any of the children’s vested rights. We disagree. In Keith v. U.S. Fidelity & Guar. Co., 96-2075, p. 6 (La.5/9/97); 694 So.2d 180, 183, the Louisiana Supreme Court stated:
Article 6 requires a two-fold inquiry. First, we must ascertain whether the enactment expresses legislative intent regarding retrospective or prospective application. If such intent is expressed, the inquiry ends unless the enactment impairs contractual or vested rights. If no such intent is expressed, the enactment must be classified as either substantive, procedural or interpretive. St. Paul Fire & Marine Ins. Co., 609 So.2d at 816; Cole, 599 So.2d at 1063. It is well accepted that substantive laws either establish new rules, rights, and duties or change existing ones, while interpretive laws merely establish the meaning the statute had from the time of its enactment. St. Paul Fire & Marine Ins. Co., 609 So.2d at 817. Procedural laws prescribe a method for enforcing a previously existing substantive right and relate to the form of the proceeding or the operation of the laws. [ ] Segura v. Frank, 93-1271, 93-1401 (La.1/14/94); 630 So.2d 714. Nonetheless, since the application of legislative enactments has constitutional implications under the due process and contract clauses of both the United States and Louisiana Constitutions, even where the Legislature has expressed its intent to give a substantive law retroactive effect, the law may not be applied retroactively if it would impair contractual obligations or disturb vested rights. Id.
We find no merit in the argument that the 1993 enactment of La.R.S. 9:305 does not disturb or impair vested rights. Those children born prior to 1993 were faced with the prospect of disavowal, and all the ramifications of that, only under the terms of La. Civ. Code art. 189. The possibility of action under that Article was generally removed by the passage of 180 days after knowledge, or imputed knowledge, of the birth of that child. With the enactment of La.R.S. 9:305, the person from whom the |7child of a marriage might pursue financial support was altered, and altered substantially. This law affects parties on all sides of the equation, both children and fathers, biological or legal. Mr. Fontenot’s argument that this change was procedural merely because the proper payor has changed, is meritless.[5]
Turning to those cases that have found La.R.S. 9:305 to be applicable prospectively only, we disagree with Mr. Fontenot that these cases are distinguishable from the instant matter. The facts of Fruge v. Fruge, 96-344 (La.App. 3 Cir. 11/6/96); 682 So.2d 932, are squarely in line with those of the case now before us. In that earlier case, the father argued that “under Section 1, his claim has not prescribed because [the child] was born on November 29, 1984 and that he filed his action for disavowal within ten years, November 10, 1994.” Id. at p. 5; 934. In Fruge, we referenced the first circuit’s opinion in Burke v. Ledig, 94-2044 (La.App. 1 Cir. 5/5/95); 655 So.2d 546, writ denied, 95-1857 (La.11/17/95); 663 So.2d 720, and then explained that “La.R.S. 9:305 applies retroactively to those individuals whose action under La.Civ.Code art. 189 has pre *335 scribed, only if such action is instituted within 180 days from August 15, 1993.” Id. at p. 6; 935. Mr. Fontenot contends that the facts of Fmge are dissimilar from the instant matter in that “the facts of the case implfy] prior knowledge and erroneous belief of patronage [sic] prior to the initiation of the proceeding by Mr. Fruge in excess of one hundred eighty (180) days from discovery of such knowledge.” We disagree with this assessment of the facts in Fruge. While reference to that case indicates that Mr. Fruge alleged that he had been surgically prevented from contributing to the conception of the child, no | ^factual findings were made in this regard. Neither does the opinion focus on such a distinction. Rather, that panel of this court clearly stated that the statute applied retroactively only insofar as the 180 day period was concerned. While Mr. Fontenot goes on to argue that the holding in Fruge “is in direct contradiction to the clear, unambiguous and specific language of LSA-R.S. 9:305[,]”we disagree for the reasons expressed in the above discussion regarding retroactive/prospective application.
Our conclusion is also supported by Whiddon, 96-104, 676 So.2d 674, in which the court was faced with a situation where the child subject to the action was born in 1985. The couple was divorced in 1986. In December 1994, after the enactment of the statute, Mr. Whiddon learned from blood testing that he was not the biological father of the child. He filed an action under La.R.S. 9:305 in February 1995. Under this scenario, which is factually similar in all respects to the instant matter and importantly identical in that knowledge regarding paternity arose after the lapse of the 180 day period of retroactive application, a panel of this court observed first that any action under La.Civ.Code art. 189 was untimely and then went on to state:
The effective date of La.R.S. 9:305 was August 15, 1993. Mr. Whiddon brought this action on February 21, 1995, more than one year after the effective date of the Act. Therefore, any claim he may have had under La.R.S. 9:305 has also prescribed.
The law provided Mr. Whiddon with two opportunities to attempt [disavowal], and he failed to take advantage of either of these opportunities. Mr. Whiddon’s action to disavow the child has prescribed, and the trial court erred in concluding that it had not prescribed....
Whiddon, 96-104, p. 4; 676 So.2d at 676.
In Whiddon v. Whiddon, 98-1844 (La.App. 3 Cir. 5/5/99); 736 So.2d 296, writ denied, 99-1606 (La.9/17/99); 747 So.2d 566, a panel of this court again addressed an issue raised on the underlying factual scenario discussed above. However, on | gsubsequent review, this court considered the father’s petition that was filed in 1997, after the amendment of La.R.S. 9:305. As explained above, the 1997 amendment provided another period of retroactive application for those actions brought “ancillary to any child support proceeding brought within one hundred eighty days of August 15, 1997....” Acts 1997, No. 1110, § 2. Because the father’s petition was filed on August 25, 1997, within that 180 day period of the amended statute, the court found it to be timely. While this latter Whiddon case contains instructive guidance regarding jurisprudence interpreting La.R.S. 9:305, it does not require the result sought by Mr. Fontenot. Here, we are not faced with a situation where a petition was filed within a legislatively authorized period of retroactive application.
For these reasons, we find the appellant’s arguments without merit. As the above discussion reflects the accuracy of the trial court’s decision to sustain the exception, whether it be prescription or no cause of action, we do not separately discuss the exception as one for no cause of action.[6]

*336
Answer

Through their curator, the children have filed an answer seeking damages for frivolous appeal and for attorney’s fees for the curator’s work on this appeal. La. Code Civ.P. art. 2164 authorizes an appellate court to award damages for a frivolous appeal. However, the supreme court has explained that damages are not allowed unless the appeal is “unquestionably frivolous!;.]” Hampton v. Greenfield, 618 So.2d 859, 862 (La.1993). Referencing a prior opinion, the supreme court went on to note that such damages are permitted only when the appeal was taken solely for delay and counsel is not sincere in the position advanced. Id. While unsuccessful, |inwe do not find that Mr. Fontenot’s appeal rises to this level. Accordingly, damages are denied.
The answer also contains a request for “additional curator fees for representing the minors on appeal[.]” In denying this request we note that an order signed by the trial court judge and filed on June 15, 2000, requires that “MICHAEL SHANE FONTENOT deposit the necessary costs to compensate attorney [sic], should appeal be taken.” Whether these have been paid as ordered by the trial court, or not, enforcement does not lie with this court. Accordingly, this request is also denied.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against the appellant, Michael Shane Fontenot.
AFFIRMED.

. In an "Order” providing written reasons, the trial court explained:
Plaintiff has filed a Petition to Disavow Paternity and Change of Custody. He seeks to disavow the children under La.R.S. 9:305 since the action to disavow under CC Art. 189 has prescribed. The Court appointed a lawyer to represent the minor children, namely, J. Harold Fontenot. Mr. Fontenot filed an Exception of Prescription and No Cause of Action.
The Court finds that La.R.S. 9:305 is substantive and therefore applies prospectively. The prior acts are also prospective (Aug. 15, 1993 and August 15, 1997) except for the 180 day window granted in each. Plaintiff in this action does not fit into either of the windows of opportunity. Accordingly, the Exception of No Cause of Action is sustained.

. Additionally, La.Civ.Code art. 184 instructs that "[t]he husband of the mother is presumed to be the father of all children born or conceived during the marriage.”

. Article 189 has since been amended by Acts 1999, No. 790 and now allows for a longer, one-year period. The revised Article now provides:
A suit for disavowal of paternity must be filed within one year after the husband learned or should have learned of the birth of the child; but, if the husband for reasons beyond his control is not able to file suit timely, then the time for filing suit shall be suspended during the period of such inability-
Nevertheless, the suit may be filed within one year from the date the husband is notified in writing that a party in interest has asserted that the husband is the father of the child, if the husband lived continuously separate and apart from the mother during the three hundred days immediately preceding the birth of the child.
Section 3 of the Act indicates that the one-year period has been made to apply retroactively. As either period expired long before the filing of the petition here, we apply the 180-day period in effect at the time.

.La. Const, art. Ill, § 19 provides: "All laws enacted during a regular session of the legislature shall take effect on August fifteenth of the calendar year in which the regular session is held....” As the act at issue was enacted during a regular session of the legislature, the above date is that applicable to the 1993 provision.

. In Aucoin v. State Through Dept. of Transp., 97-1938, 97-1967 (La.4/24/98); 712 So.2d 62, the Louisiana Supreme Court found that a statutory amendment revoking the prospect of solidary liability and replacing it with joint and several liability altered an existing rule and, thus, was substantive and only applicable prospectively. As a party's right to recover was not altered, merely the way in which he could recover, the result reached in Aucoin and the discussion contained therein appears to be contrary to Mr. Fontenot’s position.

. We also note that due to the above findings, we need not address the alternative grounds *336 raised for sustaining the no cause of action, i.e., the fact that the action under La.R.S. 9:305 was not brought "ancillary to any child support proceeding brought within one hundred eighty days of August 15, 1997....” Acts 1997, No. 1110, § 2.